\*NOT FOR PUBLICATION\*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
                                        :

SHARON E. MCGHEE                 :
                                          :

              Plaintiff,        :

                                          :         Case No. 08-594 (FLW)

             v.             :

                                          :           **OPINION**:

COMMISSIONER OF SOCIAL SECURITY :
                                          :

             Defendant.      :
————————————————————— :

**WOLFSON, United States District Judge:**

Plaintiff Sharon E. McGhee ("Plaintiff"), appeals from the final decision of the Commissioner of Social Security (the "Commissioner"), denying Plaintiff disability benefits under the Social Security Act ("Act"). Plaintiff contends that the record substantiates her claims that she is disabled, and requires a conclusion that she is entitled to disability insurance benefits. After reviewing the administrative record, this Court finds that the ALJ's decision is supported by substantial evidence in the record, and accordingly, affirms the ALJ's decision to deny Plaintiff disability benefits.

## I.    OVERVIEW

### A.    Procedural History

Plaintiff initially filed an application for Social Security Disability Benefits on January 16, 2001. AR 162. In the application, Plaintiff alleged that her disability began on December 30, 2000, due to neck and back injuries, her status of being HIV-positive, and depression. AR 162. Plaintiff's claims were first denied on or around March 12, 2001, and again upon reconsideration

on January 7, 2002.  AR 39, 48.  In June 2003, Plaintiff appeared at a hearing before an administrative law judge (ALJ), and on September 18, 2003, the ALJ issued an unfavorable decision, denying Plaintiff benefits on the basis that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act (the "Act"), during the relevant period. AR 23.

Plaintiff then petitioned the Social Security Appeals Council (the "Appeals Council") for review of the ALJ's decision, which was granted on November 23, 2004.  AR 100.  The Appeals Council reversed the ALJ's decision and remanded for further consideration of Plaintiff's residual function capacity ("RFC") and evidence from a vocational expert.  AR 100.  On remand, Plaintiff appeared at a second hearing before the ALJ, who subsequently issued a partially favorable decision.  AR 134.  Specifically, the ALJ determined that Plaintiff was disabled as of the date of her fiftieth birthday, March 11, 2004, but not before.  AR 131.

Plaintiff petitioned the Appeals Council for review of the ALJ's decision, including the finding that Plaintiff was not disabled between her alleged disability onset date of December 30, 2000 and her fiftieth birthday, which was granted on May 3, 2006.  AR 134.  The Appeals Council affirmed the ALJ's decision finding Plaintiff disabled as of March 11, 2004, but vacated and remanded the ALJ's decision for the alleged disability period prior to this date, ordering the ALJ to obtain additional evidence from a vocational expert based on the revised RFC.  AR 134-36.  On January 9, 2007, a hearing was held before the ALJ on this issue, and on January 25, 2007, the ALJ issued an unfavorable decision, finding Plaintiff not disabled for the period from December 30, 2000, to March 11, 2004.  AR 23.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 7, 2008, making the ALJ's January 25, 2007 decision a final, appealable judgment.  AR 4.

Plaintiff then filed a Complaint in this Court on January 31, 2008, appealing from the ALJ's decision to deny Plaintiff benefits beginning from her December 30, 2000 alleged disability onset date. *See* Dkt. No. 1. On May 19, 2008, the parties filed a consent order to remand Plaintiff's claim. *See* Dkt. No. 5. A hearing was held on March 3, 2009, before a different ALJ, and a supplemental hearing was held on September 18, 2009. AR 855, 898. The ALJ issued an unfavorable decision of Plaintiff's disability claim from the earlier alleged disability onset date, and the Appeals Council denied review. AR 774. On January 2, 2013, following a consent order by the parties, the Court reopened Plaintiff's case, *see* Dkt. No. 8, which is now fully briefed.[1]

### B.      Background

Plaintiff was born on March 11, 1954, and was 46 years old when her alleged disability began. AR 22  Prior to her disability, Plaintiff performed work as a cashier and in the child care field. AR 17-20, 877-78. In 1997, Plaintiff was involved in a motor vehicle accident, in which she sustained injuries to her neck and back, causing her to miss one week of work. AR 17. In December 1999, Plaintiff was involved in another motor vehicle accident; at that time, the emergency room x-rays of her hip and spine following the accident revealed nothing abnormal, and she was discharged from the emergency room that same day. AR 17, 260-63. However, several months later, in February 2000, Plaintiff was diagnosed with, *inter alia*, acute post-traumatic cervical, thoracic, and lumbrosacral sprain, bilateral lumbar radiculopathy, and post-traumatic head injury, as well as protruding and/or herniated disc(s). AR 17-18, 606-607. In December 2000, Plaintiff visited a chiropractor, Kenneth DiCarlo, D.C., who reported that

---

[1]      Plaintiff filed her opening brief, and the Commissioner filed a brief in opposition. After several delays in the case, including Plaintiff's failure to abide by a deadline she requested, the Court ordered that no reply brief would be considered in this matter. *See* Dkt. No. 22.

Plaintiff had a herniated disc and could no longer work.  AR 18, 487.  Plaintiff complains that from this point forward, she could no longer do any work; although she attempted to engage in providing child care services in 2001, she could not satisfactorily complete the necessities of the job, and eventually stopped working altogether by 2002.  AR 20.  Around this same time, Plaintiff complains that she became depressed, such that she was unable to do basic household tasks.  AR 20-21.  Beginning in 2003, Plaintiff complains that she also experienced significant pain from her back and neck injuries, which required biweekly chiropractic treatments and injections of steroids, and which severely limited her ambulatory abilities.  AR 21.  In addition, Plaintiff complains that she also suffers from high blood pressure, limited flexibility, and is HIV-positive.  AR 21.  Based on these contentions, Plaintiff applied for benefits under the Act.  In connection with her application for benefits, Plaintiff visited several medical professionals for evaluation of her physical and mental health in addition to those already mentioned.  I detail the relevant findings of these professionals below.

### C.  Review of Medical Evidence

In January 2001, Plaintiff's neurosurgeon, Dr. Bruce Rosenblum, who had examined Plaintiff previously, noted that Plaintiff was lacking a right tricep jerk and left ankle jerk, and that Plaintiff had cervical spine injuries.  AR 485, 487.  Plaintiff underwent a cervical spine MRI in February 2001, which revealed moderate broad based disc herniation posteriocentrally, along C5-6, and overlaying bony hypertrophy causing neural foraminal encroachment greater on the right than left.  AR 342-43, 561-62.  Plaintiff also underwent a lumbar spine MRI the same day, which showed mild degenerative disc disease with disc bulges most prominent at L4-5.  AR 343, 562.

Concurrent with Plaintiff's examination and treatment by Dr. Rosenblum, on March 2, 2001, a state agency physician reviewed Plaintiff's medical record, including Plaintiff's HIV-positive status, and determined that Plaintiff should be able to frequently lift/carry up to 25 pounds, and to stand, walk, and sit for six hours each in an eight hour workday.  AR 500-501, 507.  With respect to Plaintiff's HIV, the physician found nothing that indicated a known opportunistic infection, and that, overall, Plaintiff was asymptomatic.  AR 502.  Several days later, on March 8, 2001, another state agency physician reviewed the medical evidence and, focusing on Plaintiff's spinal injuries, opined that Plaintiff was able to (i) occasionally lift and/or carry up to 50 pounds and frequently lift and/or carry up to 25 pounds; (ii) sit, stand and/or walk for about six hours each in an eight- hour workday; and (iii) occasionally climb, stoop, and crouch, and frequently balance kneel and crawl.  AR 299-301, 304, 306.  Indeed, the doctor noted nothing in Plaintiff's record indicating neurological deficits; rather the record showed that she had a normal gait with no manipulative limitations.  AR 300, 302.[2]

On March 15, 2001, Plaintiff visited Asbury Park Total Health Care, and was seen by a registered nurse, Maryann M. Brogden.  AR 421  Nurse Brogden noted Plaintiff's self-reported claim that her cervical spine had improved, and previously noted numbness in her right upper extremity numbness had resolved; however, Plaintiff also reported that she was unable to write for any length of time, or hold anything, because she lacked the strength in her arm.  AR 421.  Plaintiff also complained to the Nurse of mid-back tenderness, radiating low back pain, and pain on straight leg raising.  AR 421.  The following month, Plaintiff was tested by Asbury Park Total Health Care, on April 9, 2001, with no aberrant results; Plaintiff had normal deep tendon

---

[2]        Also, in January 2002, a third state agency physician reviewed Plaintiff's record and, taking note of, *inter alia*, Plaintiff's herniated discs and discectomy without focal neuro deficits, opined that Plaintiff was able to frequently lift/carry up to ten pounds and stand, walk and sit for six hours each in an eight-hour workday.  AR 514-15, 519, 521-22.

reflexes, no gross abnormalities on motor strength testing, and no gross deficits to pinprick and light touch. AR 331, 333.

In June 2001, Plaintiff underwent a microlumbar discectomy surgery on her lumbar spine at the recommendation of her neurosurgeon, Dr. Rosenblum. AR 323, 479, 559-60. According to Dr. Rosenblum, Plaintiff's surgery proceeded "without incident." AR 560. On July 17, 2001, Plaintiff had a follow-up visit with Dr. Rosenblum, who found that Plaintiff now had "good alleviation of her pain." AR 477. Indeed, Plaintiff had no focal neurologic findings with reference to the lumbar-sacral spine and negative straight leg raising, and was able to walk without an assistive device, or an antalgic gait. AR 477. Plaintiff visited Dr. Rosenblum for another follow-up visit on September 25, 2001. AR 476. At that time, Plaintiff reported that her legs continued to feel better following the lumbar spine surgery; nevertheless, Dr. Rosenblum recommended that Plaintiff participate in twice-weekly physical therapy for a ten-week period. AR 476. Plaintiff's return visit to Dr. Rosenblum in January 2002 and June 2003 reconfirmed Dr. Rosenblum's previous diagnoses. AR 543. In June 2002, Plaintiff, on examination by Dr. Rosenblum, was observed to walk without antalgia or an assistive device. AR 549. From 2002 to 2003, Plaintiff continued to be treated by Dr. Rosenblum for her continuing neck and back issues, including with medications and epidural injections. *See, e.g.*, AR 548-550.

In late 2003 and early 2004, Plaintiff was seen by Dr. Ramil S. Bhatnager. Following observations that Plaintiff could only sit for four hours in an eight hour work day, and only one hour without interruption, AR 629, Dr. Bhatnager performed a lumbar laminectomy and fusion on March 17, 2004. AR 705. During her follow-up visit on March 26, 2004, Dr. Bhatnager noted that Plaintiff "is doing quite well" and that "her leg pain is markedly improved" as was her

strength.  AR 704.  Dr. Bhatnager recommended proceeding with physical therapy at that time. AR 704.

While Plaintiff was being treated for her spinal issues, Plaintiff was referred by Dr. Rosenblum to pain management specialist Dr. Geoffrey W. Ndeto, at Jersey Shore Medical Center (JSMC), who first examined Plaintiff on April 1, 2003.  AR 686-87.  Upon examination, Dr. Ndeto noted that Plaintiff had full power in the upper extremities and had no obvious sensory deficits, and that her neck flexion, extension and rotation were within normal limits.  AR 686, 688.  According to Dr. Ndeto, Plaintiff reported no pain during any of the test movements.  AR 686.  Dr. Ndeto then examined Plaintiff's lower extremities, noting that she retained full power without obvious sensory deficits, and 2+ reflexes bilaterally.  AR 687.  Nevertheless, because Plaintiff had reported a "perception of weakness" in her right upper extremity, Dr. Ndeto prescribed physical therapy.  AR 687.

Simultaneously, Plaintiff visited the JSMC Aids Clinic by Dr. Kathleen Casey, for her HIV. AR 271-292, 741-65.  Plaintiff was prescribed anti-HIV medications, as well as other medications such as Zoloft for depression.  AR 290.  However, when Plaintiff was examined by Dr. Casey on November 14, 2003, it was noted that Plaintiff was "still off HIV meds."  AR 762. Dr. Casey reported nothing remarkable from her physical examination of Plaintiff, including that Plaintiff's HIV remained asymptomatic, although she noted that Plaintiff complained of back pain.  AR 762-63.  On December 13, 2003, Plaintiff was re-examined by Dr. Casey, who noted that. Plaintiff complained that she still felt depressed—apparently because of Plaintiff's report that she could not "walk any distance"—and further complained that she had not yet felt the effects of her antidepressants.  AR 759.  Again, Plaintiff's physical examination by Dr. Casey was unremarkable, and Plaintiff's HIV infection status continued to be asymptomatic.  AR 760.

**D.     Testimonial Record**

**1.     Plaintiff's Testimony**

Plaintiff testified before the ALJ on March 30, 2009.  AR 871.  Plaintiff testified that since

the date of her alleged disability, which resulted from her motor vehicle accident in 1999, she

had to cease work as a cashier due to her medical conditions.  AR 877-78.  Plaintiff testified that

she began experiencing pain in her neck and back, that prevented her from being able to

"function," *e.g.*, she could not stand, sit, or walk for more than 15-20 minutes at a time.  AR 878-

79.  According to Plaintiff, her back pain was unbearable, and she also experienced pain in her

arm and hands, and migraine headaches—all of which require treatment with pain medications

and prevent her from writing.  AR 879-81.  Plaintiff further testified that she did not believe she

would be able to work any sedentary job requiring her to work an eight-hour day, or be able to

lift up to ten pounds or carry five pounds.  AR 883.  Plaintiff also mentioned her HIV-positive

status; although Plaintiff did not immediately begin HIV-specific medications following her

diagnosis, she testified that she felt tired and depressed and was prescribed antidepressants in

connection with her HIV.  AR 878.  With regards to additional medical treatment, Plaintiff

testified that she regularly saw a chiropractor following the 1999 motor vehicle accident, as well

as a physical therapist.  AR 887.

**2.     Vocational Expert Testimony**

Rocco Meola, an independent vocational expert, propounded answers to interrogatories and

also testified at a supplemental hearing, having reviewed the documentary record.  AR 849, 855.

In the interrogatories, the ALJ posed the following hypothetical:

> Assume a hypothetical individual who was born on March 11, 1954, has at least a
> high school education and is able to communicate in English . . . and has work
> experience as [a supervisor cashier for over 15 years] . . . .  Assume further that
> this individual has the residual function capacity to preform sedentary work . . .

8

> except [that she] can sit or stand at her election, cannot preform continual and
> repetitive fine finger manipulations, cannot preform activities involving continual
> and repetitive extended head movements and must preform simple and repetitive
> task to do effects of pain and medication.

AR 850.  In Mr. Meola's interrogatory answers, he determined, for the relevant period and based on this hypothetical, that although Plaintiff could not perform her past work, she could perform sedentary, unskilled work as a carding machine operator, hand mounter, or preparer, and that such jobs existed in excess of 20,000 in the national economy.  AR 850-51.

At a subsequent hearing, Plaintiff's counsel posed a series of questions to Mr. Meola.  First, counsel confirmed that the job options proffered by Mr. Meola in the interrogatories were in fact sedentary work.  AR 859.  Counsel continued by asking Mr. Meola if someone who could only stand for four hours per day, maximum, could still preform the jobs identified in the interrogatories, to which Mr. Meola responded no, that such an individual would not be able to do any sedentary work.  AR 860-61.  Mr. Meola also explained that an individual with the same subjective complaints as Plaintiff—being able to stand or sit continuously for only 15-20 minutes at a time—would similarly not be able to perform sedentary work.  AR 862.  Counsel next inquired whether the proposed jobs required the use of any machinery, to which Mr. Meola responded that only the carding machine operator would likely be required to use a machine, and that if this was a limitation, Plaintiff would not be able to preform such a job.  AR 865.  Mr. Meola disputed that the use of other tools, such as hand tools, fell within any such limitation.  AR 866.  Finally, Mr. Meola agreed with counsel's assessment that if the hypothetical individual

posed in the interrogatories had the additional limitation of significant fatigue, requiring mid-day rest, such an individual would not be able to preform the jobs identified.  AR 869.[3]

### E.      The ALJ's Findings

In a decision dated September 29, 2009, the ALJ initially determined that Plaintiff met the insured status requirements of the Social Security Act from the alleged disability onset date through December 31, 2005.  AR 777.  After reviewing the record and applying the relevant law, the ALJ determined that Plaintiff was not under a disability within the meaning of the Act during the applicable disability period.  AR 781.

In reaching this conclusion, the ALJ applied the standard five-step sequential evaluation process to determine if Plaintiff satisfied her burden of establishing disability.[4]  AR 777-81.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of December 30, 2000 through the date she was adjudged to be disabled, March 11, 2004.  AR 777.  At step two, the ALJ found that Plaintiff had the following severe impairment during this period of time: back disorder.  AR 777.  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the SSA that would automatically find Plaintiff disabled.  AR 777.

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in CFR 404.1567(a), except that Plaintiff "needed to work in an environment allowing her to sit/stand at her election and that did not require her to preform continual and repetitive fine fingering manipulations or continual and repetitive head

---

[3]      The ALJ rejected counsel's attempt to introduce specific testimony from Plaintiff in a prior hearing regarding her inability to use her arms or extremities.  *See* AR 867-69.

[4]      *See infra* Part II.B.

movements." AR 778. The ALJ also imposed a limitation on Plaintiff's RFC, limiting her to "simple and repetitive tasks due to pain and side effects of medication." AR 778. The ALJ employed a two-step process whereby the ALJ first evaluated whether there was "an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." AR 778. After determining that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ evaluated whether Plaintiff's assertions as to the "intensity, persistence and limiting effects" of her symptoms were credible. AR 779. As to that issue, the ALJ found that Plaintiff's statements regarding the extent of her pain and other symptoms were not credible because they were inconsistent with Plaintiff's medical history and RFC. AR 779. Specifically, the ALJ noted that despite evidence supporting Plaintiff's severe impairment of a back injury, "the evidence also established that [Plaintiff] retained the capacity to function adequately to preform many basic activities associated with work." AR 779.

The ALJ gave significant weight to the objective medical evidence in the case, as well as Plaintiff's testimony that was consistent with that evidence. AR 779. Notably, the ALJ explained that the entirety of the medical evidence showed that Plaintiff's impairments "do not impose such severe limitations on her functional capacity as to preclude performance of all work activity." AR 780. In support, the ALJ referenced, *inter alia*, Plaintiff's follow-up visits with Dr. Rosenblum, which repeatedly noted that Plaintiff "was able to walk without an assistive device and did not have an antalgic gait." AR 780. The ALJ also relied on Plaintiff's treating physician's assessment that Plaintiff was able to "lift and/or carry 10-15 pounds; stand and/or walk 4 hours in an 8 hour day; sit up to 4 hours in an eight-hour workday; and occasionally balance, stoop, crouch, and kneel." AR 780.

In light of the RFC assessment, and based on the testimony of the vocational expert, the ALJ determined that Plaintiff could not perform her past relevant work as a supervisor cashier.  AR 780.  However, the ALJ accepted the testimony from the vocational expert, Mr. Meola, that Plaintiff would be able to perform work in sedentary jobs, such as carding machine operator, hand mounter, and preparer, which existed in sizeable number in the national economy.  AR 781.  Based on these findings, the ALJ concluded that the Plaintiff is "not disabled" under the SSA and denied Plaintiff benefits for disability and disability insurance benefits for the period from December 30, 2000, through March 11, 2004.  AR 781.

## II.   DISCUSSION

### A.   Standard of Review

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record."  42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance.  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.

1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

### B.    Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  *See* 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Eligibility for supplemental security income requires the same showing of disability.  *Id.;* § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  *See* 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits.  *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140.  Second, the

ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Id.*  A claimant who does not have a severe impairment is not considered disabled.  *Id.* § 404.1520(c); *see Plummer*, 186 F.3d at 428.  Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.  *See id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5.  If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.  *See* 20 C.F.R. § 404.1526(a).  If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  *Id.*  An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity to perform his or her past relevant work.  20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.  If the claimant is able to perform previous work, the claimant is

determined to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  *Plummer*, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

## C.     Plaintiff's Arguments

Plaintiff raised several challenges on appeal to the ALJ's decision denying her benefits for the period December 30, 2000 through March 11, 2004.  Plaintiff primarily asserts that (i) at step four, the ALJ erroneously determined Plaintiff's RFC based on the available medical evidence and Plaintiff's testimony, and (ii) at step five, the ALJ failed to include all of Plaintiff's limitations in the hypotheticals posed to the vocational expert.  *See* Pl. Br., 1.  Both of these challenges attack the ALJ's RFC determination; the difference being that at step four, the burden or proving limitations rests on Plaintiff, whereas at step five, the Commissioner has the burden of proving that Plaintiff's RFC allows Plaintiff to preform work in the national economy.  *See Wallace v. Sec'y of Health and Human Svcs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  I address each of these challenges in turn.

### 1.     Step Four Challenge

At step four, the ALJ determined that Plaintiff had the RFC:

to perform the exertional demands of sedentary work, which requires lifting and carrying objects weighing up to ten pounds; standing and/or walking up to two hours in an eight-hour workday; and sitting up six hours in an eight-hour workday [in accordance with C.F.R. 404.1567 and 416.967]. Additionally, the [Plaintiff] needed to work in an environment that allowed her to sit/stand at her election and did not require her to preform continual and repetitive fine fingering manipulations or continual and repetitive head movements. The [Plaintiff] was also limited to simple and repetitive tasks due to pain and side effects of medication.

AR 779. Plaintiff challenges the ALJ's RFC determination on the basis that (i) a finding that an individual needs to stand/sit at her election precludes a finding that the individual can preform sedentary work; (ii) the ALJ failed to include all of Plaintiff's documented impairments, as well as the combined effect of those impairments; and (ii) the ALJ failed to account for Plaintiff's testimony that she suffers from fatigue and depression.[5] Pl. Br. at 8.

In making a residual functional capacity determination, the ALJ must consider all evidence before her. *See Plummer v. Apfel*, 186 F.3d at 429; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Although the ALJ may weigh the credibility of the evidence, she must give some indication of the evidence which she rejects and her reason(s) for discounting such evidence. *See Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In *Burnett*, the Third Circuit determined that the ALJ had not met his responsibilities because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." 220

---

[5] Although Plaintiff's headings suggest that Plaintiff is attacking the ALJ's RFC determination generally, review of Plaintiff's arguments reveals only these three above-identified challenges to the RFC. In any event, as evidenced by the recitation of the medical evidence, *supra*, Part I.C, it is clear that the ALJ's decision in this regard is supported by more than substantial evidence. Moreover, to the extent that Plaintiff's challenge is more aptly construed as a challenge to the ALJ's decision at step two—whether Plaintiff has demonstrated a "severe impairment"—such a challenge fails for the same reasons as noted above. *See* 20 C.F.R. § 404.1520(c) (requiring the ALJ to determine whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities); *Bowen*, 482 U.S. at 146-47 n.5.

F.3d at 121.  "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."  *Cotter*, 642 F.2d at 705.  In that regard, the ALJ must also consider and weigh all of the non-medical evidence before him.  *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Cotter*, 642 F.2d at 707.  A claimant's allegations of pain and other subjective symptoms are to be considered, *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529), and, if they are consistent with objective medical evidence but the ALJ rejects such allegations, the ALJ must provide an explanation for doing so.  *See Van Horn*, 717 F.2d at 873.  Finally, the ALJ may also consider factors such as the claimant's daily activities, measures the claimant uses to treat pain or symptoms, and credibility.  20 C.F.R. § 416.929(c)(3); *see also Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981).

Plaintiff's first challenge to the RFC focuses not on whether certain limitations were or were not included by the ALJ, but on what, Plaintiff claims, is a contradiction in limitations. Plaintiff relies entirely on SSR 83-12 in support of her contention that the ALJ erred in finding that Plaintiff could preform sedentary work, as defined in C.F.R. 404.1567, with the additional limitation that Plaintiff could elect to sit/stand at will.[6]  SSR 83-12 addresses circumstances, like the present case, where a claimant is found to fall within one of the categories of exertional work set forth in C.F.R. 404.1567, but with an additional limitation not contemplated by the regulation.  Indeed, SSR 83-12 addresses the exact circumstance here, *i.e.*, a RFC that includes a limitations that an individual preform sedentary work with the ability to sit/stand at will.

---

[6]     To the extent that Plaintiff contends the ALJ erred because the RFC should contain a limitation permitting Plaintiff to alternate between sitting and standing for lengthy periods of time, *e.g.*, 15-20 minutes, such a contention fails for the same reasons as discussed *infra*: the objective medical evidence does not support such a limitation, and the ALJ properly discounted Plaintiff's subjective complaints on that basis.

Contrary to Plaintiff's contention, however, this decision does not categorically prohibit an RFC that limits an individual to sedentary work from also including the limitation that the individual should be able to sit/stand at her election.  Rather, the decision notes that, where, as here, the claimant is found to have the RFC to preform unskilled, sedentary jobs, "a VS [vocational specialist] should be consulted to clarify the implications for the occupational base."  SSR 83-12. This is exactly what the ALJ proceeded to do in Plaintiff's case, and thus, I reject Plaintiff's claim that, as a matter of law, the ALJ's RFC assessment is erroneous.

Plaintiff next claims that the ALJ failed to include all of her impairments, and the combined effect thereof; this argument turns primarily on the lack of any limitation based on Plaintiff's fatigue and depression stemming from her HIV-positive status.  Review of the objective medical evidence reveals no basis for such a limitation.  Plaintiff points to no medical history documenting any fatigue or depression, whether or not directly caused by her HIV-positive status or any medications associated with treating her HIV.  Rather, as noted *supra*, during the relevant period, Plaintiff's HIV was asymptomatic, and although she was prescribed medications for HIV, the record indicates that she did not take them.  AR 271-292, 741-65.  The record does show that Plaintiff complained of being depressed—although it is unclear whether she believed this to be based on her HIV status or her back injury—and for which she was prescribed antidepressants.  However, nothing in the objective medical evidence supports a finding that Plaintiff was in fact depressed, or that her depression or medications prevented her from performing work in accordance with the limitations imposed by the RFC.  Indeed, during the relevant time period, the record reveals that Plaintiff was only diagnosed with a back injury; there was no medical diagnosis of depression or fatigue.  The ALJ did not err by failing to incorporate Plaintiff's subjective, self-reported symptoms, when such symptoms were not

supported by any objective medical evidence.  *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves constitute disability."); *cf. Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979) (holding that great weight is given to a claimant's subjective testimony *only* when it is supported by competent medical evidence).

For similar reasons, the ALJ did not err by discrediting Plaintiff's testimony when it was contradicted by the objective medical evidence.  Plaintiff argues on appeal that the RFC does not include "daily chronic symptoms of pain, postural and manipulative limitations, depression, fatigue and the effect of their frequency, intensity and duration" that would result in more restrictive limitations than the current RFC.  Pl. Br. 19-20.  Plaintiff's argument is misguided for several reasons.  First, the RFC explicitly includes postural and manipulative limitations, as well as those based on pain.  AR 779 ("[Plaintiff] needed to work in an environment that allowed her to sit/stand at her election and did not require her to preform continual and repetitive fine fingering manipulations or continual and repetitive head movements.  The [Plaintiff] was also limited to simple and repetitive tasks due to pain and side effects of medication.").  Second, the ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment" because they are contrary to the objective medical evidence.  AR 779.  In other words, the ALJ already considered and rejected the same argument Plaintiff makes on appeal.  Plaintiff points to nothing in the objective medical evidence that undermines, let alone contradicts, the ALJ's determination that Plaintiff's subjective complaints were not credible.  The Third Circuit has explained that an ALJ may reject a claimant's subjective testimony if the ALJ does not find it credible so long as she explains why she is rejecting the testimony, which

occurred in this case. *Schaudeck v. & Comm'r of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999); *see also Snedeker v. Comm'r of Soc. Sec.*, 244 F. App'x 470, 474 (3d Cir. 2007) (even in case where claimant had a severe impairment, special consideration of claimant's testimony on that impairment not warranted where not supported by competent medical evidence); *Holiday v. Barnhart*, 76 F. App'x at 482 (finding no error in ALJ giving little weight to claimant's testimony regarding severity impairment where testimony not supported by the record). Accordingly, I find that the ALJ did not err in not crediting Plaintiff's subjective testimony that was not supported by the record.

### 2. Step Five Challenge

Plaintiff also asserts that the ALJ erred during step five by failing to account for all of Plaintiff's impairments in the hypothetical questions posed to the vocational expert, Rocco Meola. Pl. Br. at 21-24. Specifically, Plaintiff contends that the hypothetical questioning failed to account for certain impairments or deficiencies, such as Plaintiff's fatigue, depression, and HIV status. *See* AR 869. Essentially, Plaintiff's challenge to the vocational expert questioning turns on her disagreement with the RFC assessment. Plaintiff does not contend that the hypothetical individual on which the vocational expert based his responses did not incorporate all the limitation present in the ALJ's RFC; rather, Plaintiff argues that the vocational expert should have considered additional limitations, beyond those in the RFC. Again, as noted *supra*, these additional impairments are based solely on Plaintiff's testimony. Plaintiff points to no objective medical evidence other than her own testimony supporting any of these claimed impairments. Because I have already determined that the ALJ's RFC determination is supported by substantial evidence in the record, and the ALJ properly excluded Plaintiff's subjective complaints from the RFC, it was not error for the ALJ to also exclude these complaints from the

hypothetical questions posed to the vocational expert.[7]  *See Johnson v. Comm'r*, 529 F.3d 198, 206 (3d Cir. 2008) (holding that hypothetical questions must reflect those impairments *actually* supported by the record).

Plaintiff's only other challenge to the step five analysis arises out of the contention that it was improper for the ALJ to impose the limitation that Plaintiff could sit/stand as needed. According to Plaintiff, and relying on SSR 00-4p, in making the social security disability determination, "[t]he Commissioner is not entitled to consider potential accommodations by employers in determining the availability of jobs in the national economy than an applicant can preform." Pl. Br. 23.  No such principle is found in SSR 00-4p, which deals with the weight given to vocational expert testimony when it conflicts with the Agency's own regulations. Plaintiff has not identified any conflict here that is contemplated by SSR 00-4p, or any other authority supporting his argument, and thus I reject Plaintiff's challenge to the ALJ's step five determination in this regard as well.  As Plaintiff raises no other challenge to the step five analysis, I find that Plaintiff has failed to demonstrate that the ALJ erred.

**CONCLUSION**

For the reasons set forth above, the ALJ's decision is AFFIRMED.

An appropriate Order shall follow.

Dated:  June 12, 2014                                     /s/ Freda L. Wolfson
                                                                  Freda L. Wolfson, U.S.D.J.

---

[7]     Similarly, it was not error for the ALJ to restrict his questioning to the RFC set forth in the September 29, 2009 decision, and to reject Plaintiff's attempt to present limitations from an RFC that was found in a previous decision, as the ALJ was instructed, and thus empowered, to take any action to consider whether Plaintiff was disabled during the period from December 30, 2000 to March 11, 2004.  *See* 20 C.F.R. 404.977.